[Cite as *State v. Brown*, 2018-Ohio-1476.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-351 |
| | | (M.C. No. 2016 TRC 158605) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Amber N. Brown, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 17, 2018

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker,* and *Melanie R. Tobias*, for appellee. **Argued:** *Melanie R. Tobias.*

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann.*

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1}  Defendant-appellant, Amber N. Brown, appeals from a judgment entry of the Franklin County Municipal Court finding her guilty, pursuant to no contest plea, of two counts of operating a vehicle while under the influence of alcohol ("OVI") and one count of impermissibly parking on a highway.  For the following reasons, we reverse.

## I. Facts and Procedural History

{¶ 2}  On July 14, 2016, plaintiff-appellee, State of Ohio, issued a citation and summons to Brown for one count of OVI, in violation of R.C. 4511.19(A)(1)(a); one count of OVI test refusal with prior conviction, in violation of R.C. 4511.19(A)(2); and one count of impermissibly parking on highways, in violation of R.C. 4511.66.  Brown initially entered a plea of not guilty.

{¶ 3}   On September 20, 2016, Brown filed a motion to suppress the evidence obtained from the warrantless seizure of Brown.  In her motion, Brown argued the state trooper lacked a reasonable suspicion to stop and detain her or to expand the scope of her detention.  Brown additionally argued the state trooper did not have probable cause to arrest her.  The state filed a memorandum contra Brown's motion to suppress, and the trial court set the matter for a hearing.

{¶ 4}   At a suppression hearing on December 15, 2016, defense counsel stipulated that the trooper had "reasonable suspicion for the stop," or "reasonable suspicion to approach in the first place." (Tr. at 5.)  Defense counsel stated it was going to limit the scope of the hearing to "the question of probable cause." (Tr. at 5.)  After some discussion, defense counsel stated it would concede the issue of impairment for purposes of the hearing and that the sole question for the hearing was whether the law enforcement officer had probable cause to believe Brown was operating the vehicle.

{¶ 5}   Michael Waters, who was employed as a state trooper with the Ohio State Highway Patrol at the time of Brown's arrest, testified that during the early morning hours of July 14, 2016, he was concluding an unrelated traffic stop when a car passed him traveling the opposite direction.  The state played the dash cam video from Trooper Waters' car and asked him to describe what was happening.

{¶ 6}   The video shows a vehicle's headlights pass by Trooper Waters' patrol car heading westbound at 2:54 a.m.  When he first noticed the car, Trooper Waters said there was nothing about it that initially drew his attention.  Trooper Waters testified he turned around to head back to his post and stopped at a red light at the intersection of Livingston Avenue and Longsdale Road alongside the vehicle that had just passed him.  The other vehicle was in the right lane, and when Trooper Waters looked over to it, he noticed there was no one in the driver's seat.  The vehicle's engine was running, and Trooper Waters saw a person in the front passenger seat and three people in the back seat.  Only five seconds elapsed from the time the vehicle's brake lights went off at the traffic light to the time Trooper Waters pulled up alongside the vehicle.

{¶ 7}   When the traffic light turned green, the other vehicle did not move.  Trooper Waters activated his overhead lights and backed his vehicle up to get directly behind the other vehicle.  As he was backing up, Trooper Waters saw the right-side rear passenger door

open and Brown emerged from the car. Trooper Waters watched Brown walk around the front of the car toward the driver's side where she "motioned her left hand towards the driver's door" but she did not touch the driver's door handle. (Tr. at 19.) At that point, Trooper Waters made contact with Brown and she began speaking with him. Trooper Waters testified he never saw Brown in the driver's seat.

{¶ 8} When he approached Brown, Trooper Waters told her to step back from the car, and he permitted her to stand outside. Trooper Waters testified that Brown appeared intoxicated and that she was very emotional. Upon asking Brown if she had been driving, Brown "became upset and started crying, then she said she did not drive." (Tr. at 15.) Trooper Waters approached the vehicle and asked the other occupants who had been driving, but each one denied any of them had been driving. Trooper Waters said the other occupants did not appear to be upset, and he said it is his experience that drivers in OVI cases are typically more upset than passengers.

{¶ 9} Of the occupants remaining in the rear seat of the vehicle, Trooper Waters said one person was seated directly behind the driver's seat and one person was seated directly behind the front passenger seat, but no one was seated in the rear middle seat. The other occupants told Trooper Waters they had been in their same seats the whole time. None of the other occupants said Brown was the driver.

{¶ 10} Brown was not the owner of the car; it belonged to one of the other occupants of the vehicle. Trooper Waters testified he did not believe the vehicle's owner was the driver because "she never admitted that she was driving." (Tr. at 39.) Trooper Waters said he asked Brown several times whether she had been driving but she denied she had been driving each time. Trooper Waters also asked Brown if she had been in the driver's seat and she responded that she "did not jump out of the driver's seat." (Tr. at 30.) Additionally, Brown asked Trooper Waters several times whether she could take a portable breath test to "see if [she was] okay to drive." (Tr. at 30.)

{¶ 11} Following their exchange outside the car, Trooper Waters brought Brown to his patrol car to identify her and to see if he could "get some more information of who was actually driving the car." (Tr. at 20.) Brown told Trooper Waters she and her friends had been celebrating her birthday. While inside the patrol car, Brown told Trooper Waters she was "sorry" and said she had "done this before," but he did not know what she meant by

that statement.   (Tr. at 22.)   After Trooper Waters identified Brown and ran her information, he learned she had a prior OVI conviction.

{¶ 12} Trooper Waters then had Brown perform field sobriety tests, and he testified she "performed poorly."  (Tr. at 20.)   Upon her completion of the field sobriety tests, Trooper Waters arrested Brown for OVI.  After Trooper Waters informed Brown she was under arrest for OVI, Brown again stated she was not the driver.  Trooper Waters testified he did not believe Brown's denials based on the locations of the other occupants of the vehicle and the fact that Brown was "the first person to get out of the vehicle."  (Tr. at 34.) Following her arrest, Brown refused the breath test at the patrol post.

{¶ 13} During closing argument, the state argued "this hearing is about whether or not [Trooper Waters] had probable cause to believe that [Brown] was operating the vehicle."  (Tr. at 40.)  Defense counsel argued Trooper Waters had insufficient information to establish probable cause to believe that Brown had been driving.  At the conclusion of the hearing, the trial court stated:

> But what we're doing here at this motion hearing is talking about reasonable suspicion, reasonable suspicion to stop.  It's there because you got a driverless car sitting on the road. Reasonable suspicion to detain Ms. Brown, I think that's there, too, because she gets out of the car and goes around, looks like she's making her way to the driver's seat, actually, asking for permission to drive, more or less, by wanting to submit to a test.
>
> So I think that the reasonable suspicion is there.  The ultimate question of whether she was driving or not, which is basically what this case turns on, honestly, I think it's a question for the jury because it's not based on reasonable suspicion.  It's based on beyond a reasonable doubt.  So the reasonable suspicion is there.  Whether you can show beyond a reasonable doubt, I don't know.  That's not my job at this hearing.  So there's no specific request in this motion for the driving issue to be determined, just asking me to determine reasonable suspicion. And I'm going to say it's there.

(Tr. at 45-46.)   Based on those reasons, the trial court then overruled Brown's motion to suppress.  The trial court journalized its decision in a December 15, 2016 entry.

{¶ 14} Following the trial court's denial of her motion to suppress, on April 17, 2017, Brown entered a no contest plea to all the charges. At the plea hearing, Brown stated she was entering a no contest plea so that she could appeal the trial court's ruling on her motion to suppress. The trial court accepted Brown's no contest plea and sentenced her to 180 days in jail with 160 days suspended for two years of community control as well as a $525 fine. The trial court journalized Brown's convictions and sentence in an April 18, 2017 judgment entry. Brown timely appeals.

## II. Assignments of Error

{¶ 15} Brown assigns the following errors for our review:

[1.] The trial court erred by failing to apply the probable cause standard for a warrantless arrest when it denied the defendant-appellant's motion to suppress unconstitutionally obtained evidence from her warrantless arrest.

[2.] The trial court erred in denying the defendant-appellant's motion to suppress unconstitutionally obtained evidence because there was insufficient evidence to establish that the officer had probable cause to believe that the defendant-appellant had operated a vehicle while under the influence of alcohol.

[3.] The trial court's failure to find that the officer lacked a reasonable suspicion to detain the defendant-appellant to conduct field sobriety tests was plain error.

## III. First Assignment of Error – Motion to Suppress

{¶ 16} In her first assignment of error, Brown argues the trial court erred when it denied her motion to suppress. More specifically, Brown argues the trial court applied the incorrect legal standard when considering the propriety of her arrest.

{¶ 17} " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' "

(Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 18} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Article I, Section 14, of the Ohio Constitution, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.  *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), *superseded by statute on other grounds*.  There is no dispute here that Trooper Waters arrested Brown without a warrant.  The issue here is whether Brown's arrest falls within any of the well-established exceptions to the warrant requirement.

{¶ 19} In denying Brown's motion to suppress, the trial court stated there was both reasonable suspicion to stop and reasonable suspicion to detain Brown.  One of the recognized exceptions to the warrant requirement is an investigatory detention, commonly referred to as the *Terry* stop.  Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot.  *Mendoza* at ¶ 11, citing *Terry* at 21.  Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, *superseded by statute on other grounds*, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 20} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry* at 27.  Accordingly, "[a] police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557.  An appellate court views the propriety of a police officer's investigative stop or detention in light of the totality of the surrounding circumstances.  *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.

{¶ 21} Brown concedes Trooper Waters had reasonable suspicion for the initial stop and her initial detention in order to determine who had been driving.  Indeed, Brown

conceded as much at the trial court and instead limited the scope of the suppression hearing to whether Trooper Waters had probable cause to arrest Brown.

{¶ 22} "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 66, citing *United States v. Watson*, 423 U.S. 411 (1976). "In determining whether a police officer has probable cause to arrest a suspect for OVI, a court considers whether, at the moment of arrest, the officer had information within the officer's knowledge, or derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe the suspect was driving under the influence of alcohol, drugs, or both." *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 20, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds*. The trial court must examine the totality of the circumstances surrounding the arrest in making this determination. *Id.*

{¶ 23} The stipulated issue at the suppression hearing was whether Trooper Waters had probable cause to arrest Brown. More specifically, the issue was whether Trooper Waters had probable cause to believe Brown was the driver of the vehicle. Despite this stipulation, however, the trial court declined to make any findings related to Brown's operation of the vehicle, stating instead that was an issue for the jury. The trial court did not engage in any analysis of probable cause; rather, it denied Brown's motion to suppress on the basis of reasonable suspicion to stop and reasonable suspicion to detain. Because the arrest could only be valid if Trooper Waters had probable cause to arrest Brown, the trial court erred when it analyzed Brown's motion to suppress "under the rubric of reasonable suspicion rather than that of probable cause." *State v. Byrd*, 10th Dist. No. 15AP-1091, 2016-Ohio-7670, ¶ 26, citing *State v. Muldrow*, 10th Dist. No. 15AP-1119, 2016-Ohio-4774, ¶ 24 (a trial court errs when it applies the incorrect legal standard in its ruling on a motion to suppress).

{¶ 24} Though the state concedes it was error for the trial court to deny the motion based on reasonable suspicion to stop and detain, the state argues this court should nonetheless affirm the denial of a motion to suppress because the record supports a finding that Trooper Waters had probable cause to arrest. However, the trial court only rendered factual findings related to its reasonable suspicion analysis, specifically declining to make

any findings regarding Brown's operation of the vehicle. As the United States Supreme Court has explained, "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). The appropriate remedy in a case where the trial court applies the wrong legal standard in analyzing a motion to suppress is to remand the matter to the trial court to make the appropriate factual findings relevant to a probable cause analysis for Brown's arrest and then determine, in the first instance, whether the law enforcement officer had probable cause to make the arrest. *Byrd* at ¶ 27, citing *Muldrow* at ¶ 26 (where trial court applies wrong legal standard in a motion to suppress, the appropriate remedy is to remand for the trial court to apply the correct legal standard with appropriate factual findings).

{¶ 25} Thus, because the trial court applied the wrong legal standard in analyzing Brown's motion to suppress, we sustain Brown's first assignment of error.

## IV. Second and Third Assignments of Error – Operation of Vehicle and Field Sobriety Tests

{¶ 26} In her second assignment of error, Brown argues that, in lieu of remand, this court should apply the facts from the suppression hearing to a probable cause analysis and conclude Trooper Waters lacked probable cause to believe Brown was the driver of the vehicle. In her third and final assignment of error, Brown argues it was error for the trial court to fail to make a determination about the validity of the field sobriety tests. However, our resolution of Brown's first assignment of error renders moot her second and third assignments of error and we need not address them. *See Byrd* at ¶ 34.

## V. Disposition

{¶ 27} Based on the foregoing reasons, the trial court erred when it analyzed Brown's motion to suppress under the standard of reasonable suspicion rather than probable cause. Because of the trial court's erroneous application of the legal standard, the trial court did not make the appropriate factual findings necessary to apply the probable cause analysis. Having sustained Brown's first assignment of error and Brown's second and third assignments of error being moot, we reverse the judgment of the Franklin County

Municipal Court and remand this matter to that court with instructions for the court to consider the evidence at the suppression hearing and make, in the first instance, the appropriate legal determinations consistent with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

DORRIAN and HORTON, JJ., concur.