[Cite as *State v. Shalash*, 2021-Ohio-1034.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 19AP-757 (C.P.C. No. 19CR-2092) |
| v. | : | (REGULAR CALENDAR) |
| Belal M. Shalash, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 30, 2021

**On brief:** *G. Gary Tyack,* Prosecuting Attorney, and *Seth L. Gilbert*, for appellant. **Argued:** *Seth L. Gilbert.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a decision and entry of the Franklin County Court of Common Pleas granting the motion to suppress of defendant-appellee, Belal M. Shalash. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2} By indictment filed May 8, 2019, the state charged Shalash with two counts of aggravated menacing in violation of R.C. 2903.21, both first-degree misdemeanors; and one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16, a fourth-degree felony. The indictment related to conduct occurring on or about April 23, 2019. Shalash entered a plea of not guilty.

{¶ 3} On August 6, 2019, Shalash filed two separate motions to suppress: one sought suppression of Shalash's identification and the other sought suppression of the evidence seized following the warrantless search of Shalash's vehicle. The state filed a

memorandum contra to both of Shalash's motions to suppress. At the outset of the suppression hearing conducted October 11, 2019, Shalash withdrew his motion to suppress identification, and the matter proceeded as to Shalash's motion to suppress the evidence seized following the search of his vehicle.

{¶ 4} During the suppression hearing, Kurt Chapman, an officer with the Columbus Division of Police, testified that at 3:05 p.m. on April 23, 2019 he responded to a dispatch of a "gun run," where it was reported a male had threatened a female with a handgun. (Tr. at 7.) When he arrived at the residence on South Harris Avenue, Officer Chapman said he spoke with Pamela Rock, the victim of the incident and the 911 caller. Officer Chapman testified that Rock told him that a Hispanic man "showed up to her door, pointed a firearm and left the scene in a white BMW," and that there was a woman in the vehicle with him. (Tr. at 34.) Additionally, Officer Chapman testified that Rock told him the man had a black or silver handgun. Rock's neighbor, Dillon Coal, told Officer Chapman he had a surveillance camera on his vehicle and he was able to obtain a partial license plate number from the white BMW. Officer Chapman said that Rock informed him they would be able to find the man at the Wedgewood apartment complex.

{¶ 5} Officer Chapman testified that after speaking to Rock and her neighbors, he drove to the Wedgewood apartment complex and observed a vehicle matching the description the neighbors provided at the north side of the apartment complex. As he approached the vehicle, Officer Chapman said he was able to match the dealer tag on the car with the partial license plate obtained from the surveillance video. Officer Chapman testified he then approached the vehicle and had a brief conversation with Shalash, and there was also a woman in the vehicle with Shalash. Shalash denied having been on South Harris Avenue. Officer Chapman then asked Shalash to step out of the vehicle, and Shalash cooperated. Once he was out of the vehicle, Officer Chapman testified Shalash did not try to run and did not act in a furtive manner. By that time, there were four officers on the scene. While Officer Chapman conducted a warrant check of Shalash's personal information, his partner conducted a pat-down of Shalash's person.

{¶ 6} After the warrant check indicated Shalash did not have any outstanding warrants, Officer Chapman testified he planned to take a report of the incident and refer Rock to the prosecutor's office. However, before placing Shalash back in the vehicle, Officer

Chapman testified his partner "conducted a protective sweep of the vehicle for any weapons," and during that sweep Officer Chapman's partner located a gun. (Tr. at 13.) After police found the gun in the vehicle, the officers placed Shalash in handcuffs. Officer Chapman testified that police officers sometimes use handcuffs for officer safety even if they do not ultimately arrest the person.

{¶ 7} Jacob Pawlowski, an officer with the Columbus Division of Police, also testified at the suppression hearing. Officer Pawlowski stated he also responded to the gun run on April 23, 2019 and encountered Shalash in the white BMW. It was Officer Pawlowski who conducted the pat-down of Shalash's person when Shalash first exited his vehicle. Officer Pawlowski testified he talked with Officer Chapman and they "both agreed that [they] had enough for a protective sweep" of the vehicle. (Tr. at 48.)

{¶ 8} After conducting a protective sweep of the vehicle, Officer Pawlowski testified he found a handgun located underneath the front passenger seat. Officer Pawlowski testified he found the handgun first and then Shalash was detained in handcuffs while he finished the protective sweep of the vehicle which he said could have revealed additional firearms. After Shalash was placed in handcuffs, Shalash asked whether he was under arrest and Officer Pawlowski told him he was not yet under arrest but was being "detained." (Tr. at 52.) The officers then placed Shalash in the rear of a prisoner transport vehicle, and Officer Pawlowski found the magazine to the handgun.

{¶ 9} Officer Pawlowski also described Shalash as cooperative during the encounter. He further testified that had Shalash been able to get back in his vehicle, he would have been able to access the handgun.

{¶ 10} Following the hearing, the trial court granted Shalash's motion to suppress. The trial court determined the protective sweep of the vehicle violated Shalash's Fourth Amendment rights, concluding there was no objective or subjective evidence that any of the officers involved believed Shalash to be dangerous before or during the stop. Thus, the trial court found that suspicion of the presence of a weapon was an insufficient basis to justify the search of the vehicle. The trial court journalized its decision granting the motion to suppress in an October 29, 2019 decision and entry. The state timely appeals.

## II.  Assignment of Error

{¶ 11}  The state assigns the following error for our review:

> The trial court erred in erred in granting Shalash's motion to suppress evidence.

## III.  Standard of Review and Applicable Law

{¶ 12}  In its sole assignment of error, the state argues the trial court erred in granting Shalash's motion to suppress.  More specifically, the state asserts surrounding facts and circumstances justified the protective sweep of Shalash's vehicle.

{¶ 13}  " 'Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 14}  As the state notes, the material facts here are not in dispute.  The trial court summarized the testimony of Officers Chapman and Pawlowski and did not make a finding or otherwise indicate that either witness lacked credibility.  Instead, the sole question before us is whether the facts presented at the suppression hearing satisfy the applicable legal standard for the protective sweep of Shalash's vehicle.

{¶ 15}  The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, as well as Article I, Section 14 of the Ohio Constitution, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.  *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), *superseded by statute on other grounds*.  There is no dispute here that police officers opened and searched Shalash's vehicle without a warrant.  The issue is whether any of the recognized exceptions to the warrant requirement apply.

{¶ 16} One of the recognized exceptions to the warrant requirement is an investigatory detention, commonly referred to as the *Terry* stop. Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. *Mendoza* at ¶ 11, citing *Terry* at 21. Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, *superseded by statute on other grounds*, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 17} In *Michigan v. Long*, 463 U.S. 1032 (1983), the United States Supreme Court expanded the *Terry* warrantless search exception to protective searches of automobiles. In *Long*, the Supreme Court held that officers could undertake a protective sweep or search of "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, * * * if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long* at 1049, quoting *Terry* at 21. The test for reasonableness of the search of the vehicle is " 'whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Id*. at 1050, quoting *Terry* at 27. *See also State v. Cordell*, 10th Dist. No. 12AP-42, 2013-Ohio-3009, ¶ 14.

{¶ 18} When determining whether a protective search is justified, courts apply an objective standard to determine if the " 'facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate.' " *State v. Bobo*, 37 Ohio St.3d 177, 178-79 (1988), quoting *Terry* at 21-22. Applying this objective standard, courts review the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir.1976).

{¶ 19} Here, the facts presented at the hearing established that when the officers initially approached Shalash and detained him, they had a reasonable suspicion based on

specific, articulable facts that Shalash was engaged in criminal activity. The officers were responding to a dispatch of a "gun run," where a woman reported a man had threatened her with a gun. The officers had a physical description of the man with the gun, a description of his vehicle, a partial license plate number, and a report of a location in which he could be found, all of which matched Shalash and his white BMW when the officers approached him in the Wedgewood apartment complex. Based on the information from the 911 call and the people at the scene when they responded, the officers' reasonable suspicion was that Shalash was dangerous and had a gun. That reasonable suspicion would not have disappeared once Shalash was out of the vehicle. And the fact that Shalash was cooperative during the length of his detention does not vitiate the reasonable suspicion the officers already had, and continued to have, both when they initially approached him and as long as they held him there.

{¶ 20} Thus, the facts available to the officers at the moment they approached Shalash's vehicle, asked him to exit the vehicle, and conducted a pat-down of his person were sufficient to warrant a person of reasonable caution in the belief that it was necessary to conduct a *Terry* stop. Once the officers had Shalash out of the vehicle and the pat-down revealed he did not have a gun on his person, it was reasonable for them to believe the gun was in the vehicle, and they were therefore justified in doing a protective sweep of the vehicle before allowing Shalash to get back in the vehicle.

{¶ 21} In reaching the opposite conclusion, the trial court focused its analysis entirely on Shalash's conduct during the stop. The trial court noted that Shalash did not act furtively, that he was cooperative, and that he never attempted to flee. However, Shalash's generally compliant behavior once he was out of his vehicle does not render the officers unable to rely on the information they had received regarding Shalash's pre-stop conduct in determining whether it was necessary for them to conduct a protective sweep of the vehicle. *See State v. Cook*, 2d Dist. No. 2019-CA-28, 2019-Ohio-3918, ¶ 15 (an informant's report that a man was "waving a handgun inside a vehicle" just prior to police stopping the vehicle created reasonable suspicion to justify both the stop of the vehicle and the protective sweep of the vehicle based on "the reasonable, prudent belief that [the man] was dangerous and a handgun was within the vehicle"). Here, the officers had credible information that Shalash had a gun inside the vehicle and that he had just threatened

someone with that gun. That information supported their reasonable belief, despite Shalash's cooperation with police, that a protective sweep was necessary.

{¶ 22} While the trial court stated it would be inappropriate for police to conduct a protective sweep of a vehicle based solely on "mere suspicion" that there may be a weapon in the vehicle, the officers here had far more than a mere suspicion. (Decision & Entry at 4.) Based on the report from the 911 caller, the officers had a reasonable belief both that Shalash was armed and that he was possibly dangerous. Again, the trial court's analysis fails because it does not account for the information the officers had regarding Shalash's conduct just prior to their encounter with him. *See State v. Broughton*, 10th Dist. No. 11AP-620, 2012-Ohio-2526, ¶ 19 (noting courts considering the totality of the circumstances to determine whether a warrantless search or seizure is appropriate consider factors including the defendant's suspicious activities "both *before* and during the stop") (emphasis added), citing *Bobo* at 179. The trial court's decision presumes that the officers' reasonable suspicion dissipated at some point during the detention before they conducted the search of the vehicle. The facts simply do not support that presumption.

{¶ 23} Moreover, to the extent the trial court concluded that the officers could no longer have had a reasonable belief that they were in danger once they decided to issue Shalash a citation and return him to his vehicle, neither the facts of this case nor the case law support such a conclusion. Had police returned Shalash to his vehicle without conducting the protective sweep, he would have had immediate access to the weapon at the conclusion of the stop. *Cook* at ¶ 15 (search of the vehicle at the conclusion of the stop prior to allowing the defendant to re-enter his vehicle was a valid protective weapons search that did not violate the Fourth Amendment because the defendant "would have had immediate access to such a handgun upon the stop's completion and his return to the vehicle"). *See also State v. Atchley*, 10th Dist. No. 07AP-412, 2007-Ohio-7009, ¶ 19 (officer's belief that the defendant might be allowed to return to the vehicle necessitated a protective search of any part of the vehicle to which the defendant could have quick and easy access to retrieve a weapon).

{¶ 24} Thus, based on these facts, we conclude the officers' search of the vehicle's passenger compartment prior to allowing Shalash to return to the vehicle was a proper protective search under *Terry* and *Long* and did not violate the Fourth Amendment. The

trial court erred, therefore, in granting Shalash's motion to suppress. Accordingly, we sustain the state's sole assignment of error.

## IV. Disposition

{¶ 25} Based on the foregoing reasons, the trial court erred in granting Shalash's motion to suppress as the officers' search of the passenger compartment of the vehicle was a proper protective search. Having sustained the state's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and we remand the matter to that court for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

BROWN and BROGAN, JJ., concur.

BROGAN, J., retired, formerly of the Second Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).