[Cite as *State v. Hardy*, 2025-Ohio-5194.]

THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

    Plaintiff-Appellee,          :                    No. 25AP-207
                                                                              (C.P.C. No. 23CR-1068)

v.                                      :

                                                               (ACCELERATED CALENDAR)

Kenneth B. Hardy,                       :

    Defendant-Appellant.        :

---

D E C I S I O N

Rendered on November 18, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Michael A. Walsh*, for appellee.
**Argued:** *Michael A. Walsh*.

**On brief:** *Jeremy Dodgion* for appellant.
**Argued:** *Jeremy Dodgion*.

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Kenneth B. Hardy, appeals from a January 30, 2025 judgment entry after pleading no contest to one count of possession of a fentanyl-related compound and accompanying firearm specification. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 3, 2023, Hardy was indicted by a Franklin County Grand Jury on two counts of possession of a fentanyl-related compound in violation of R.C. 2925.11, felonies of the fifth degree (Count One and Two); one count of aggravated possession of drugs in violation of R.C. 2925.11, a felony of the fifth degree (Count Three); one count of improper handling of firearms in a motor vehicle in violation of R.C. 2923.16, a felony of the fourth degree (Count Four); one count of unlawful possession of dangerous ordnance in violation of R.C. 2923.17, a felony of the fifth degree (Count Five); and one count of

having weapons while under disability in violation of R.C. 2923.13, a felony of the third degree (Count Six). Counts One through Three each included a six-year firearm specification under R.C. 2941.144(A). On April 3, 2023, Hardy pleaded not guilty.

{¶ 3} On August 29, 2023, Hardy filed a motion to suppress the state's introduction of any and all evidence obtained through an allegedly unreasonable search and seizure. The state filed a memorandum contra on September 11, 2023. On October 3, 2023, the trial court held a hearing regarding the motion to suppress at which the following evidence was adduced.

{¶ 4} Andrew Sargent is an officer with the Columbus Division of Police. (Oct. 3, 2023 Tr. at 7.) On February 7, 2023, Detective James Kirk requested assistance from a uniformed officer regarding the stop of a vehicle that had failed to signal. (Tr. at 8, 11-12.) Kirk put the request out over "a secondary channel that we use for chitchat and tactical coordination amongst one another." (Tr. at 24.) According to Sargent, Kirk also noted that a passenger in the vehicle had an active warrant. (Tr. at 8.) Sargent responded to the call but was the second or third cruiser to arrive at the scene. (Tr. at 8.) When Sargent arrived, the passenger with the warrant, later identified as Hardy, was already taken out of the vehicle and placed under arrest. (Tr. at 9.) Sargent "went around to the passenger side of the vehicle where the front passenger door was standing open. And the moment that I arrived at that open door, I saw the barrel of a gun on the front passenger floorboard pointed, like, up and out the door almost right in my direction." (Tr. at 9.) Sargent noted the firearm was partially covered by a sweatshirt, and he could also see a "drum magazine." (Tr. at 9.) "A drum magazine rather than just being a single or a doubt stack of rounds of ammunition that would fit inside the grip, it extends and it's round as a drum would be and that allows for a significantly higher capacity of ammunition." (Tr. at 9-10.)

{¶ 5} On cross-examination, Sargent acknowledged that Kirk requested a uniformed officer  make the first contact. (Tr. at 19.) Sargent explained that Kirk, a plainclothes officer, could be surveilling an individual and ask for assistance from patrol officers to make the initial contact. Once the initial contact is made, the plainclothes officer would then take over the investigation. (Tr. at 19.) Sargent conceded that he did not personally observe a traffic violation. (Tr. at 22.)

{¶ 6} Zachary Daylong is an officer with the Columbus Division of Police. (Tr. at 30.) Daylong recalled that on February 7 2023, while he was responding to a robbery, Kirk put out a request for assistance with a traffic stop. (Tr. at 31.) Once cleared from the robbery call, Daylong "waited in a position while . . . Kirk was following the vehicle and airing the vehicle location." (Tr. at 31.) According to Daylong, Kirk described the vehicle as a silver Buick Envision, stated that the vehicle had failed to signal, and that the passenger had a warrant. (Tr. at 32, 39.) When Daylong, along with Officer Sturgin, caught up with the vehicle, they initiated a traffic stop near the intersection of East 25th Avenue and Billiter. (Tr. at 33, 49.) When Daylong approached the vehicle, he observed Hardy in the front passenger seat. (Tr. at 33-34.) While Daylong had never interacted with Hardy, Daylong had seen a photograph of him on the cruiser computer. (Tr. at 34-35.) Daylong placed Hardy in handcuffs and put him in the police vehicle. (Tr. at 35.)

{¶ 7} On cross-examination, Daylong noted that the mother of Hardy's child was the driver of the vehicle. (Tr. at 53.) Daylong acknowledged that he did not personally observe a traffic violation. (Tr. at 49.) On re-direct examination, Daylong stated that he did not make the stop until he knew the nature of the traffic infraction. (Tr. at 57.) When Daylong approached the vehicle, he confirmed the identity of Hardy before detaining him in the police vehicle. (Tr. at 57.)

{¶ 8} Kirk is a detective with the Columbus Division of Police in the Criminal Intelligence Unit. (Tr. at 60.) On February 7, 2023, Kirk was working in the Linden area as a plainclothes officer in an unmarked cruiser. (Tr. at 60-62.) Kirk is "quite familiar" with Hardy as he has dealt with him in other matters. (Tr. at 62.) Kirk identified Hardy in the courtroom. (Tr. at 62.) On the date in question, Kirk first observed Hardy outside the Duxberry Avenue residence about an hour or two before the eventual stop. (Tr. at 63-64.) Kirk was aware that Hardy had an outstanding warrant. (Tr. at 63.) Kirk later observed Hardy enter the front passenger seat of a silver Buick. (Tr. at 64-65.) Kirk began following the vehicle and stated over the radio a description of the vehicle, license plate number, and that Hardy, who had an outstanding warrant, was in the vehicle. (Tr. at 66-67.) Kirk explained that because he lost sight of the vehicle, he wanted to wait for a traffic violation to have reasonable suspicion to initiate a stop. (Tr. at 67-68.) Kirk testified that he personally observed the vehicle fail to signal from Cleveland Avenue onto 24th Avenue. (Tr.

at 68.) Kirk estimated that it was a few minutes from the time of the traffic violation to when the vehicle was stopped. (Tr. at 69.) According to Kirk, Hardy was in the same vehicle he initially entered on Duxberry Avenue. (Tr. at 69.) Kirk also observed the firearm in the vehicle wrapped in a blue hooded sweatshirt. (Tr. at 72.)

{¶ 9} On cross-examination, Kirk acknowledged that he has previously interacted with Hardy as part of other criminal investigations. (Tr. at 76.) Kirk conceded that he surveilled Hardy for an extended period of time. (Tr. at 78.) Kirk was aware that Hardy had an active warrant for domestic violence. (Tr. at 69-70, 78.) Kirk clarified the sequence of events stating that he initially "drove down Duxberry and I saw [Hardy] in the front yard. Then I called additional officers to help me out. I was the only one out there. Between the time of me seeing him and calling for extra help and that help arriving, Mr. Hardy had gone inside." (Tr. at 79-80.) Kirk conducted stationary surveillance until Hardy came out of the residence. (Tr. at 89.) When Hardy came out of the residence, he entered the vehicle. (Tr. at 89.) While Kirk followed the Buick, he lost sight of the vehicle "several times." (Tr. at 88.) Because Kirk lost sight of the Buick, he believed it was necessary to get an additional reason to initiate a stop. (Tr. at 88.) Kirk denied that he followed Hardy's vehicle for over an hour. (Tr. at 89.) Kirk acknowledged that he cannot corroborate the traffic violation with additional evidence. (Tr. at 85.)

{¶ 10} At the conclusion of the hearing, the trial court noted its concerns with the case. "I'm really challenged and concerned by what I've heard. I know the law is what it is. And even though I don't like the methods used -- and I don't. I'll say that out loud -- I think this is trash." (Tr. at 122.) On November 20, 2023, the trial court denied Hardy's motion to suppress. While the trial court found that no constitutional violation took place, its continued distaste for law enforcement's tactics was evident. "The context in which the stop occurred from the Court's perspective is questionable, however, the constitution is what it is. There is no ethical or moral question that this Court needed to resolve." (Nov. 20, 2023 Tr. at 3.)

{¶ 11} On January 27, 2025, Hardy pleaded no contest to one count of possession of a fentanyl-related compound and one six-year firearm specification. The remaining counts were dismissed nolle prosequi. The parties jointly recommended a six-month sentence on the felony offense to run consecutive to the six-year mandatory term of incarceration for

the firearm specification. (Jan. 27, 2025 Tr. at 4-6.) The parties further sought to have the sentence run concurrent to Hardy's sentence in Franklin County case No. 22CR-2757. *Id*. The trial court adopted the joint recommendation of the parties.

{¶ 12} Hardy filed a timely notice of appeal.

## II. ASSIGNMENT OF ERROR

{¶ 13} Hardy assigns the following as trial court error:

> The trial court erred in denying the appellant's motion to suppress by failing to recognize that the evidence was obtained in violation of the Fourth Amendment to the United States Constitution.

## III. STANDARD OF REVIEW

{¶ 14} Appellate review of a trial court's decision to deny a motion to suppress presents a mixed question of law and fact. *State v. Diaw*, 2024-Ohio-2237, ¶ 19 (10th Dist.), citing *State v. Robertson*, 2023-Ohio-2746, ¶ 13 (10th Dist.), citing *State v. Harrison*, 2021-Ohio-4465, ¶ 11, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *State v. Ivery*, 2023-Ohio-3495, ¶ 30 (10th Dist.), citing *State v. Pilgrim*, 2009-Ohio-5357, ¶ 13 (10th Dist.). In a suppression hearing, the trial court first assumes the role of the trier of fact and, thus, is best positioned to resolve questions of fact and determine the credibility of the witnesses. *Robertson* at ¶ 13, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). As such, we review a trial court's findings of fact to determine whether they are supported by competent, credible evidence. *In re N.D.*, 2024-Ohio-5779, ¶ 22 (10th Dist.), citing *In re D.B.*, 2018-Ohio-1247, ¶ 15 (10th Dist.), citing *State v. Castagnola*, 2015-Ohio-1565, ¶ 32. We then independently resolve whether the facts satisfy the applicable legal standard without deference to the trial court's legal conclusions. *Id*.

## IV. LEGAL ANALYSIS

{¶ 15} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Supreme Court of Ohio has held that Article I, Section 14 of the Ohio Constitution offers the same protections as the Fourth Amendment in felony matters. *State v. Jones*, 2015-Ohio-483,

¶ 12, citing *State v. Smith*, 2009-Ohio-6426, ¶ 10, fn. 1.  These constitutional safeguards offer a restraint on the state and, more specifically, law enforcement, to protect an individual's privacy interests and security from arbitrary invasions by government officials. *Diaw* at ¶ 33, citing *State v. Rogers*, 2023-Ohio-2749, ¶ 13 (10th Dist.), citing *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967); *Ivery* at ¶ 34, citing *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 17.  When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of demonstrating that the search falls under one of the established exceptions of the Fourth Amendment's warrant requirement. *State v. Johnson*, 2022-Ohio-1733, ¶ 48 (10th Dist.); *State v. Roberts*, 2006-Ohio-3665, ¶ 98 ("[w]hen police conduct a warrantless search, the state bears the burden of establishing the validity of the search").

### A.  Surveillance

{¶ 16} Hardy first argues that law enforcement's prolong surveillance of him on the Duxberry property and while traveling in the silver Buick constitutes an unreasonable search.  Hardy contends that a similar issue was addressed in *United States v. Jones*, 565 U.S. 400 (2012) and *State v. Johnson*, 2014-Ohio-5021.

{¶ 17} As an initial matter, Hardy failed to raise this argument in his motion to suppress.  A defendant's failure to adequately specify an argument in their motion to suppress results in waiver of that issue on appeal.  *State v. Wintermeyer*, 2017-Ohio-5521, ¶ 10, citing *Columbus v. Ridley*, 2015-Ohio-4968, ¶ 28 (10th Dist.).  As such, Hardy has waived this argument on appeal.

{¶ 18} Arguendo, even if we considered whether Kirk's surveillance of the property and vehicle constituted an unreasonable search, we find Hardy's argument without merit. "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *State v. Thornton*, 2009-Ohio-5125, ¶ 11 (10th Dist.), citing *State v. Keith*, 2008-Ohio-6122, ¶ 16 (10th Dist.), citing *United States v. Jacobsen*, 466 U.S. 109, 112-13 (1984).  This court has found that an individual cannot be said to have a reasonable expectation of privacy over which he knowingly exposes to the public.  *Thornton* at ¶ 11, citing *State v. Lopez*, 1994 Ohio App. LEXIS 4350 (2d. Dist. Sept. 28, 1994).  We explained "[a]n individual does not have a reasonable expectation of privacy in possessions that are in plain view to the public, even if those things are in the person's home.  Thus, a law

enforcements officer's observation of activities or things that are in plain view, from a vantage point where the officer has a right to be, does not constitute a search for purposes of the Fourth Amendment." (Internal citation omitted.) *Keith* at ¶ 16. In that situation, Fourth Amendment protections are not implicated as a search did not occur. *Id.*

{¶ 19} Here, Kirk initially observed Hardy in the front yard of the Duxberry residence. "So I saw him when I drove down Duxberry. He was in his front yard. I called for assistance to help me out with Mr. Hardy and his warrant. By the time the other plainclothes and uniformed officers got in the area, he was already inside. So he conducted stationary surveillance until Mr. Hardy came out." (Oct. 3, 2023 Tr. at 89.) When Hardy exited the Duxberry residence, he entered the front passenger seat of the silver Buick. (Tr. at 64-65, 89.) Appellant acknowledged that "Detective Kirk conducted surveillance from outside the property." (Appellant's Brief at 22.) Thus, Kirk's surveillance of Hardy at the Duxberry residence, from a vantage point where Kirk had a right to be, did not constitute a search for the purposes of the Fourth Amendment.

{¶ 20} Furthermore, Kirk's surveillance of Hardy while he traveled in the Buick does not implicate his Fourth Amendment rights as he had no reasonable expectation of privacy. " 'A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.' " *Johnson*, 2014-Ohio-5021, at ¶ 30, quoting *United States v. Knotts*, 460 U.S. 276, 281-82 (1983). We find Hardy's reliance on *Jones* and *Johnson* misplaced. In both *Jones* and *Johnson*, law enforcement attached a GPS tracking device to the defendant's vehicle to surveil their movements for extended periods of time. This case concerns eyewitness surveillance by a law enforcement officer for, at most, a couple hours. There is no evidence that law enforcement employed a GPS tracking device in this case. Accordingly, we find Kirk's surveillance of Hardy did not violate his rights under the Fourth Amendment.

## B. Reasonable Suspicion for Stop

{¶ 21} Next, Hardy argues that law enforcement did not have the reasonable suspicion necessary to initiate a traffic stop of the vehicle. (Appellant's Brief at 26.)

{¶ 22} A traffic stop initiated by law enforcement implicates the Fourth Amendment and must comport with the general reasonableness requirement. *State v. Small*, 2018-Ohio-3943, ¶ 19 (10th Dist.), citing *State v. Fasline*, 2014-Ohio-1470, ¶ 19 (10th Dist.).

"Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Brown*, 2018-Ohio-1476, ¶ 20 (10th Dist.), quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist. 1990). Law enforcement has sufficient cause to conduct a traffic stop when they observe a violation of traffic law. *Small* at ¶ 20, citing *Fasline* at ¶ 19. Law enforcement may also rely on information from other officers in making a traffic stop. *State v. Muldrow*, 2016-Ohio-4774, ¶ 18 (10th Dist.). Once law enforcement has effectuated the stop, they " 'may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *Small* at ¶ 20, quoting *State v. Aguirre*, 2003-Ohio-4909, ¶ 36 (4th Dist.). Officers may also conduct ordinary inquiries into whether an outstanding warrant exits. *Id.*, citing *State v. Sweeten*, 2016-Ohio-5828, ¶ 13 (1st Dist.). Law enforcement "may also ask the driver and passengers about matters unrelated to the traffic stop itself, so long as those questions do not measurably extend the duration of the stop." (Further citation omitted.) *Id.* at ¶ 21. Moreover, an officer's knowledge of an active arrest warrant provides reasonable suspicion to believe the driver, or in this case occupant, of the vehicle had committed a criminal offense, which entitles him to stop the vehicle to pursue the warrant at issue. *State v. Strong*, 2019-Ohio-2888, ¶ 27 (4th Dist.), citing *State v. Haynes,* 2018-Ohio-607, ¶ 10 (2d. Dist.); *see also State v. Boles*, 2021-Ohio-363, ¶ 22 (6th Dist.) (finding the information law enforcement received regarding eight active warrants against defendant gave him "reasonable, articulable suspicion to believe that [the defendant] had committed criminal offenses that entitled the police to 'stop,' 'seize,' and 'detain' him to pursue the warrant issue further").

{¶ 23} Despite, Hardy's contentions otherwise, Kirk testified that he observed the silver Buick fail to signal while turning from Cleveland Avenue onto 24th Avenue. (Tr. at 68.) Kirk also testified that he was aware of Hardy's active warrant. (Tr. at 67.) Both Sargent and Daylong confirmed Kirk requested assistance from a uniformed officer regarding the stop of a vehicle that had failed to signal and the individual in the passenger seat had a warrant. (Tr. at 8, 11-12, 32, 39.) According to Kirk, he wanted to obtain additional cause to pull over the vehicle because he had lost sight of it several times. (Tr. at

67-68, 88.) Because Kirk had personal knowledge of the warrant and observed the traffic violation, the other officers could use that information to stop the vehicle. *Muldrow* at ¶ 18. Based on either the traffic infraction or the active warrant, law enforcement had reasonable articulable suspicion to initiate the traffic stop of the vehicle.

### C. Plain View and Protective Sweep

{¶ 24} Finally, Hardy argues that law enforcement lacked sufficient cause to search the vehicle. We disagree.

{¶ 25} It is settled law that a person has no legitimate expectation of privacy over an object that is in plain view. *State v. Jackson*, 2022-Ohio-4365, ¶ 26, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). " '[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.' " *Jackson* at ¶ 26, quoting *Harris v. United States*, 390 U.S. 234, 236 (1968).

{¶ 26} Law enforcement may engage in protective sweeps or searches of " 'the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, * * * if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.' " *State v. Shalash*, 2021-Ohio-1034, ¶ 17 (10th Dist.), quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The test looks for reasonableness of the search as to "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*; *State v. Cordell*, 2013-Ohio-3009 (10th Dist.).

{¶ 27} When resolving whether a protective sweep was justified, we must apply an objective test to determine if the facts available to the officer at the time of the seizure or search " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." (Further citation omitted.) *Shalash* at ¶ 18, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178-79 (1988). Courts examine this objective standard based on the totality of the circumstance's " 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir. 1976).

{¶ 28} In the present case, Sargent testified that he saw a firearm when he walked by the open door of the Buick. Because Sargent observed the firearm in plain view through the open car door, there was no invasion into Hardy's legitimate expectation of privacy. Based on the discovery of the firearm in plain view, the officers were justified when they engaged in a protective sweep of the vehicle. While Hardy notes that Daylong did not observe a firearm when the passenger door was initially opened, both Kirk and Sargent testified that they observed the firearm. As there is competent, credible evidence to support Sargent's and Kirk's testimony, we defer to the trial court's determination that the officers were credible on this point.

{¶ 29} Hardy claims that the firearm was only visible because the door was left open by Daylong. In light of the Supreme Court of Ohio's decision in *Jackson*, 2022-Ohio-4365, at ¶ 24, Hardy's open-door argument is unpersuasive. In *Jackson*, the Supreme Court found that an officer did not conduct a search when he looked into an already open door and observed marijuana. *Id*. The *Jackson* court explained that because another officer opened the door, and did so without the intent to obtain information, the first officer's observation of the marijuana cigarette fell under plain view doctrine and did not amount to a search. *Id*. at ¶ 25-27. So too here. Once Sargent observed the firearm in plain view, the officers had sufficient cause to perform a protective sweep of the vehicle. Because we find that no constitutional violation took place, we decline to address the state's alternative argument concerning the inevitability doctrine. *State v. Williams*, 2007-Ohio-1015, ¶ 21 (10th Dist.), citing App.R. 12(A)(1)(c). Accordingly, Hardy's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 30} Based on the foregoing, Hardy's sole assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

————————————