[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jackson*, Slip Opinion No. 2022-Ohio-4365.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2022-Ohio-4365**

**THE STATE OF OHIO, APPELLEE, *v.* JACKSON, APPELLANT.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jackson*, Slip Opinion No. 2022-Ohio-4365.]**

*Criminal law—Search—Fourth Amendment to the United States Constitution—Motion to suppress—A search occurs only when there is an attempt to find something or to obtain information—Officer's intent is determined through an objective inquiry—Motion to suppress correctly denied when gun was found in search that ensued after contraband was found in plain view in a car.*

(No. 2021-0452—Submitted March 29, 2022—Decided December 8, 2022.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-190676, 2021-Ohio-517.

_____

**DEWINE, J.**

**{¶ 1}** During a traffic stop, an officer ordered an uncooperative driver to step out of the car and then opened the door for him to do so.  Later, a second officer

looked through the open door and observed a marijuana cigarette on the floor. That observation led to a search of the car and the discovery of an illegal firearm.

{¶ 2} We are asked to determine whether either the officer who opened the car door, or the officer who looked through the open car door and observed the marijuana cigarette, conducted an illegal search under the Fourth Amendment to the United States Constitution. We find that under the circumstances of this case, neither officer's action constitutes a search. And the subsequent search of the car after the marijuana cigarette was observed was permissible under the Fourth Amendment. Therefore, we affirm the decision of the court of appeals upholding the denial of the driver's motion to suppress.

## I. Background

### A. Officers stop a car and ask the driver to step out

{¶ 3} Cincinnati police officers pulled over Jackie Jackson for a traffic stop. After executing the stop, the officers approached Jackson's Pontiac Grand Prix from both sides. The lead officer asked Jackson to roll down his passenger-side window, turn off the car, and remove the key. Jackson protested—but rolled down his window and turned off the car without removing the key from the ignition.

{¶ 4} When told that he was being pulled over because the officers suspected that his window tint was too dark, Jackson became visibly agitated and began to argue with the officers. The second officer, who was standing near the passenger side, asked Jackson if he had his driver's license and insurance, but she got no response. As Jackson continued to argue, the lead officer restated the request for his license. Rather than comply, Jackson began pulling up the camera on his phone. The lead officer then told Jackson, "You can go ahead and give me your ID, and if you don't we'll be getting out of the car." When Jackson made no signs of complying and failed to answer the officers' requests, the lead officer opened the car door and told him to step out. Jackson continued to argue but exited on his own.

*B. An officer spots a marijuana cigarette, leading to a search and the discovery of a pistol*

**{¶ 5}** By this time, more officers had arrived on the scene. Another officer walked Jackson to the back of the car while the lead officer removed the key from the ignition. At the rear of the car, the officers patted down and spoke with Jackson.

**{¶ 6}** One officer then walked over to the driver's door, which was still open. Peering in, the officer spotted a marijuana cigarette between the door and the seat. He told the others what he had found, leading to a search of the car. In a basket of laundry, the officers discovered a pistol. Jackson was charged with having a weapon under disability, carrying a concealed weapon, and improperly handling a firearm in a motor vehicle.

*C. Jackson seeks to suppress the discovery of the pistol*

**{¶ 7}** Jackson moved to suppress the evidence, arguing that the lead officer violated the Fourth Amendment when he ordered Jackson out of the car. Jackson asserted that the officer lacked authority to order him from the car and that, therefore, evidence of the pistol that was subsequently discovered should be suppressed as fruit of the poisonous tree. The trial court reviewed the body-camera footage from the stop and denied the motion to suppress. Jackson pleaded no contest, was sentenced, and appealed.

**{¶ 8}** The First District Court of Appeals affirmed the trial court's denial of Jackson's motion to suppress. The court first noted that Jackson had waived his challenge to the stop at the suppression hearing. 2021-Ohio-517, ¶ 9-10. The court then pointed out that under settled law an officer can order a car's occupant out of a lawfully stopped car without any additional justification. *Id.* at ¶ 11-12. As to the search of the car, the court explained that an officer had observed a plainly visible marijuana cigarette, which gave him probable cause to believe that the car contained contraband and triggered the automobile exception to the warrant requirement. *Id.* at ¶ 17-18.

{¶ 9} Jackson appealed to this court, and we accepted jurisdiction over two of Jackson's three propositions of law. He argues that (1) the first officer conducted an illegal search by ordering him to step out of the car and by opening his car door and (2) the second officer committed an illegal search by looking into the open car door and observing the marijuana. We affirm.

## II. Analysis

{¶ 10} The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons * * * and effects, against unreasonable searches and seizures, shall not be violated." A search is unreasonable when police lack a valid warrant and no exception to the warrant requirement applies. *See Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

{¶ 11} In the text of his propositions of law, Jackson also refers to Article I, Section 14 of the Ohio Constitution, which provides an independent protection against "unreasonable searches and seizures." In the proceedings below, however, Jackson did not argue that the Ohio Constitution provides him any greater protection than the Fourth Amendment. And Jackson has not presented any such argument to this court. Indeed, Jackson has not developed any argument under the Ohio Constitution. As a consequence, we are constrained to evaluate Jackson's claim under only the Fourth Amendment.

*A. The officers did not violate the Fourth Amendment by ordering Jackson to exit the car*

{¶ 12} The propriety of the stop of Jackson's vehicle is not in front of us. The First District found that Jackson affirmatively waived any challenge to the stop when his attorney told the trial court at the motion-to-suppress hearing, "I'm not questioning the stop." 2021-Ohio-517 at ¶ 9. Jackson does not contest the First District's waiver finding in this appeal.

{¶ 13} Jackson does take issue with the officer's decision to order him from the car. But that challenge is easily dispensed with. Under *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 6, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." An officer needs no justification beyond that necessary for the initial stop to order a driver from the car. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993).

### B. *Opening the door was not a search*

{¶ 14} Jackson attempts to circumvent *Mimms* by arguing that when it is the officer, rather than the driver, who opens the car door, the officer conducts not just a seizure but a search. He submits that as a search, an officer's act of opening the door must be justified by exigent circumstances. But this argument miscomprehends what constitutes a search.

{¶ 15} The United States Supreme Court has identified two rubrics under which government conduct may amount to a search implicating the protections of the Fourth Amendment. First, under the common-law trespass doctrine, a search occurs when there is a " 'physical intrusion of a constitutionally protected area in order to obtain information.' " *United States v. Jones*, 565 U.S. 400, 407, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), quoting *United States v. Knotts*, 460 U.S. 276, 286, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) (Brennan, J., concurring in the judgment). Second, under the more-recently developed privacy doctrine, announced in *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a search occurs when there is an official intrusion into a sphere in which there exists a reasonable expectation of privacy with an intent to obtain information. *Jones* at 408, fn. 5. Importantly, for our purposes, under either doctrine a search occurs only when there is "an attempt to find something or obtain information." *Id.*

**{¶ 16}** The lead officer's opening of the door was not a search because he did not act with the purpose of finding out what was inside the car. As in other Fourth Amendment contexts, an officer's intent is determined through an objective inquiry. *See Torres v. Madrid*, __ U.S. __, __, 141 S.Ct. 989, 999, 209 L.Ed.2d 190 (2021); *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *United States v. White*, 928 F.3d 734, 741 (8th Cir.2019). The body-camera footage makes clear that the officer was focused on securing Jackson, who was being uncooperative. The officer's intent to secure Jackson is apparent from both his words and his actions. First, he asked Jackson to remove the key from the ignition so that Jackson could not "pull off." Then, after removing Jackson from the car, he reached in to remove the keys. Because the officer acted with the intent to secure Jackson and not with "the intent to obtain information," he did not conduct a search. *Taylor v. Saginaw*, 11 F.4th 483, 487 (6th Cir.2021). None of this is to say that an officer's opening of a car door can never constitute a search. If an officer opened a car door without the owner's permission for the purpose of ascertaining what was inside the car, such conduct might well constitute a search—it would be a physical trespass "conjoined with * * * an attempt to find something or to obtain information*." See Jones* at 408, fn. 5. But that is not what happened here. Nothing in the record indicates that the officer opened the door for any reason other than to get Jackson out of the car.

*C. The dissenting opinion misconstrues binding United States Supreme Court caselaw on what constitutes a search*

**{¶ 17}** The dissenting opinion ignores the United States Supreme Court's framework in *Jones* for determining whether conduct amounts to a "search" for the purposes of the Fourth Amendment. It accuses the majority opinion of "focusing on the subjective motivation of the officer who opened the door of Jackson's car." Dissenting opinion, ¶ 31. But we do no such thing. Instead, we focus on *objective* factors to determine whether the officer opened Jackson's door in "an attempt to

find something or to obtain information." *See Jones* at 408, fn. 5. Relevant here, (1) the officer ordered to Jackson to remove the keys from the ignition, (2) the officer subsequently opened the car door, and (3) the officer removed the car keys after he opened the door.

{¶ 18} Indeed, the very cases that the dissenting opinion cites to support the proposition that subjective intent should not be considered demonstrates that the factors we consider are part of an objective inquiry. *See Michigan v. Bryant*, 562 U.S. 344, 360, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (the objective primary-purpose inquiry involves examining the "the individuals' *statements* and *actions*" [emphasis added]); *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) ("*words* and *actions* on the part of the police" are relevant to the objective inquiry as to whether an interrogation occurred [emphasis added]).

{¶ 19} In trying to drive home the point that the officer conducted a search when he opened Jackson's door, the dissenting opinion cites *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), a case that bears only superficial resemblance to the present case. In that case, the Supreme Court found that an officer had conducted a search when he opened a car door and leaned in to move papers obscuring a VIN number, discovering a gun in the process. *Id*. at 114-115. But unlike in our case, the officer in *Class* opened the door of the defendant's car to look for the VIN number, an action that easily qualifies as "an attempt to * * * obtain information." *Jones* 505 U.S. at 408, 132 S.Ct. 945, 181 L.Ed.2d 922, fn. 5.

{¶ 20} The dissenting opinion also misunderstands *Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331, and *Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162. Both of those cases make clear that police may order a driver out of a car without violating the Fourth Amendment's proscription against unreasonable searches and seizures so long as the initial stop is lawful. *See Mimms* at 333, fn. 6; *Evans* at 408. If the initial stop is lawful, no further justification is necessary. Here, Jackson

stipulated that he was lawfully stopped. Thus, the order for Jackson to get out of the car was constitutionally permissible. The issue of who opened the door is irrelevant. *See New Jersey v. Mai*, 202 N.J. 12, 22-23, 993 A.2d 1216 (2010) (there is no relevant difference between lawfully ordering the occupant out of the car and opening the door as part of a lawful order); *State v. Ferrise*, 269 N.W.2d 888, 890 (Minn.1978) ("there is little practical difference [under *Mimms*] between ordering a driver to open his door and get out of his car, on the one hand, and opening the door for the driver and telling him to get out"); *United States v. Stanfield*, 109 F.3d 976, 983 (4th Cir.1997) ("the actual invasion of privacy entailed in an officer's opening of the vehicle door is indistinguishable from * * * that which occurs when an occupant is required to open a door to exit a vehicle pursuant to * * * *Mimms*"). The door had to be opened for Jackson to get out of the car.

{¶ 21} The officer's ultimatum was clear, "You can go ahead and give me your ID, and if you don't we'll be getting out of the car." Yet, Jackson failed to comply or even answer the officer. And for the dissenting opinion to characterize Jackson's response as "inquisitive" is more than charitable. Dissenting opinion at ¶ 59. The first couple of times Jackson asked why he was being pulled over might be considered "inquisitive," but repeatedly asking the same question even when provided with the answer and ordered to show his ID is far from "inquisitive"—it's uncooperative.

{¶ 22} Equally, misguided is the analogy offered by the dissenting opinion about an "an officer kicking in a door * * * frustrated at having been denied a warrant to search the house." Dissenting opinion at ¶ 55. The dissenting opinion contends that the "unlawfulness of kicking in the door prevents the later discovery of contraband from being a legitimate discovery of evidence in plain view, notwithstanding the subjective intentions the officers may have had." *Id.* That may be true enough, but in our case the officer did not illegally open the car door. Whether the officer opened the door, or whether the passenger opened the door

when complying with a lawful order to get out of the car under *Mimms* and *Evans*, the opening of the car door did not amount to a search under firmly established Fourth Amendment principles.

### D. *The second officer did not conduct a search*

**{¶ 23}** Jackson contends that even if the first officer did not conduct a search by opening the car door, the second officer conducted one when he looked through the open car door and spotted the marijuana cigarette.

**{¶ 24}** To be sure, the second officer acted with an intent to obtain information when he looked into the car. He had no other reason to walk over and peer into the car. In addition, his body camera lingered over the driver's compartment, indicating that he was taking a long investigative look. However, the second officer's intent alone did not turn his action into a search. An officer must also conduct a physical trespass or an invasion of privacy for his actions to amount to a search. *Jones*, 565 U.S. at 408, 132 S.Ct. 945, 181 L.Ed.2d 911, fn. 5.

**{¶ 25}** The second officer did not conduct a search under the trespass doctrine because he did not physically enter the car until after he had spotted the marijuana cigarette. *See Taylor*, 11 F.4th at 487. All the second officer did was look through an already open door. He did not open the door himself, and the officer who did open the door did so without an intent to obtain information. Without a physical trespass, the second officer's conduct cannot be considered a search under the trespass doctrine.

**{¶ 26}** Likewise, the second officer did not conduct a search under the *Katz* privacy doctrine. A person does not have a legitimate expectation of privacy in an object that is in plain view. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). And it "has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Because the officer

observed the marijuana in plain view when he looked through the open car door, there was no invasion into Jackson's legitimate expectation of privacy.

**{¶ 27}** Jackson attempts to conflate the actions of the two officers, contending that but for the first officer opening the car door, the marijuana cigarette would not have been in plain view and would not have been noticed by the second officer. That may be true, but it does not make for a Fourth Amendment violation. The Fourth Amendment by its terms protects against unreasonable searches. Neither officer conducted a search under the facts of this case.

*E. Under the automobile exception to the warrant requirement, the discovery of the marijuana cigarette in plain view allowed the officers to search the car*

**{¶ 28}** Once the second officer observed the marijuana cigarette, he had probable cause to believe that Jackson's car contained contraband. Under the automobile exception to the warrant requirement, officers may search a vehicle without obtaining a warrant when they have probable cause to believe the vehicle contains evidence of illegal activity. *See Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Thus, the officers did not transgress the Fourth Amendment when they searched the vehicle and found the pistol.

### III. Conclusion

**{¶ 29}** The police conduct in this case did not violate the Fourth Amendment to the United States Constitution. We sustain the decision of the court of appeals affirming the denial of Jackson's motion to suppress.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, and DONNELLY, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by STEWART, J.

———————

**BRUNNER, J., dissenting.**

## I. INTRODUCTION

**{¶ 30}** The majority opinion in this case recognizes the law that a car is a space protected from unreasonable searches by the Fourth Amendment to the United States Constitution. It also recognizes that law-enforcement officers generally could not have intruded into appellant Jackie Jackson's car without having cause to believe that Jackson was committing an offense. Officers stopped Jackson for what they believed were illegally tinted windows, but the officers did not have equipment to measure the extent of the tint to prove a violation. During the stop, one of the eight officers present observed evidence of a crime, finding a marijuana cigarette on the floor of a car after Jackson's door had been opened by another officer. The door was opened before the officer ordered Jackson out of the car, and Jackson was not able to shut the door before other officers moved him to the rear of the vehicle. After finding the cigarette, the officers searched the car and found a gun buried deep in a bin of clothing in the back seat.

**{¶ 31}** Jackson was charged with several violations related to his possession of the gun. The majority opinion holds that no Fourth Amendment violation occurred, because it finds that there was no search. The majority opinion improperly isolates the actions of each officer involved in the stop. The majority opinion then errs by focusing on the subjective motivation of the officer who opened the door of Jackson's car before asking him to get out of the car. It states that this officer did not conduct a search when he breached the privacy of Jackson's car by opening its door, arguing that the officer did not intend to search the car but to secure Jackson. The majority opinion then looks separately at the actions of the officer who peered under the driver's seat—while using a flashlight—and observed the cigarette, believing it to be marijuana. The majority opinion does not take into consideration that these two officers were working together. It holds that the

second officer validly observed contraband in plain view, because *this* officer did no more than take advantage of the open car door.

{¶ 32} I respectfully disagree with this analysis. Considered as a whole, this course of conduct was not only a search, it was a fishing expedition and not a constitutional law-enforcement technique. I would order that the evidence of the gun be suppressed, and I would reverse the judgment of the First District Court of Appeals.

## II. CASE BACKGROUND AND LEGAL HISTORY

{¶ 33} The majority opinion's discussion of the facts of this case begins with the premise that Jackson was an "uncooperative driver" Majority opinion, ¶ 1. It finds that Jackson, a young black male, was uncooperative after being stopped by eight officers for an alleged window-tint violation when none of them had a tint meter with them; Jackson openly questioned whether the stop was about his window tint. After stating that Jackson was uncooperative, the majority opinion's recitation of the facts does not take into account several important features of the stop, which was captured by body cameras worn by three of the officers. Moreover, the majority opinion does not point out that the video footage of the stop was the *only* evidence considered by the trial court on Jackson's motion to suppress or that the trial court never made findings of fact after it viewed the videos. Thus, I will restate the facts as seen on the videos to clarify our role when the trial court has not made findings of fact when deciding a motion to suppress.

### A. The stop, search, and arrest as seen on the videos

{¶ 34} There are three videos of the stop and the ensuing events. The first comes from the body camera of the officer who pulled Jackson over. The officer approached the open driver's-side window and instructed Jackson to roll down his front passenger-side window (which was tinted, as were all the windows of the car except the front windscreen). After Jackson complied, the officer asked Jackson to turn off his car and surrender his keys. Jackson turned off the car but did not

surrender his keys. Instead, Jackson asked why he needed to surrender his keys. The officer indicated that it was so that he would not "pull off." Jackson then asked why he would drive away and asked why he was pulled over; the officer indicated that he stopped Jackson for having an illegal window tint. By this time, at least six officers were on the scene. Jackson expressed disbelief that the encounter was really about window tint. As Jackson continued to express disbelief, a female officer on the passenger side of the car asked, in a voice barely audible on the video, whether he had a license and insurance.

{¶ 35} One second later, the officer whose body camera was recording the encounter engages in the following dialogue with Jackson:

> Jackson: So my window tint is why I'm being pulled over?
> Officer: Yeah. You can give us your [identification ("ID")] then you can still talk about that, yeah.
> Jackson: Now y'all want my keys and—
> Officer: That's common for safety reasons, yeah. And you— You can go ahead and give me your ID and, uh, if you don't we'll be gettin' out the car, so you want—you want [opens door] we're gonna get ya out the car.

In short, Jackson did not immediately comply with the suggestion that he give the officer an ID and appeared instead to be doing something with his phone. The officer, within seconds, opened the door and ordered Jackson from the car. Other officers ushered, and to a minimal extent, pulled Jackson toward the rear of the vehicle, giving him no time to close the door. Meanwhile, the first officer reached in the car, removed the key from the ignition, and placed it on the vehicle roof. Neither the officer who opened the door nor any other officer closed the door, and Jackson was not given an opportunity to do so.

{¶ 36} Jackson was then subjected to a pat-down search.[1] He informed the officers that his tint was legal, that his insurance information was in his phone, and that he was trying to activate his camera to record the stop for his own safety. One officer commented that it was "stupid" of Jackson to be fearful of the officers who were present. That officer's body camera, the second video, shows that by the time the officer spoke, eight officers were on the scene. Shortly after, the officers realized that they did not have a meter to measure the tint of the windows.

{¶ 37} A bike-mounted officer who arrived on the scene shortly after Jackson was pulled over also was wearing a body camera. The video from his camera, the third video, began approximately 30 seconds before the first officer opened the door and ordered Jackson from the car. No one closed the driver's-side door once Jackson was moved behind his car. Instead, it was left open and hanging into the roadway. The officer who was recording the second video walked to the open driver's door, pulled out his flashlight, and shined the light in the gap between the door sill and the seat. He then reported to the other officers that he could see a marijuana cigarette underneath the seat. The officer moved his body camera toward the gap between the seat and door sill, where a slim white cigarette, which appeared to be hand-rolled, could be seen. No one explained why the officer thought the cigarette was marijuana rather than tobacco. Nonetheless, based on finding the cigarette, officers conducted a full search of the car, including several bags and containers of clothing in the back seat.

{¶ 38} The second video was also recorded by one of the six bike-mounted officers. That officer mostly stood by, observing and commenting until the marijuana was discovered. He helped search the car and recovered a gun from deep inside a Rubbermaid-style storage container full of clothing in the back seat.

---

1. The search was patently illegal, given the lack of reasonable suspicion at that time that Jackson was "armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).

### B. The indictment and motion to suppress evidence of the gun

{¶ 39} Jackson was indicted on March 27, 2019, for having a weapon while under disability, carrying a concealed weapon, and improperly handling a firearm in a motor vehicle. The trial court held two hearings on Jackson's motion to suppress. In the first, the parties stipulated that the videos provided the necessary facts but presented no testimony. After it reviewed the videos and heard oral argument in the second hearing, the trial court, without stating any reasoning, overruled the motion to suppress. Jackson thereafter entered a no-contest plea to the charges in the indictment. He was found guilty and was sentenced to two years of intensive supervision on community control. On appeal, the First District Court of Appeals affirmed.

{¶ 40} The majority affirms the judgment of the First District. I would not.

### III. ANALYSIS

{¶ 41} Generally, according to *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 18, appellate review of a ruling on a motion to suppress presents a mixed question of fact and law. *See also State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court's findings of fact must be accepted by the appellate court if they are supported by competent, credible evidence. *Tidwell* at ¶ 18. Questions of law are reviewed de novo without deference to the legal conclusions of the lower court. *Id.*; *Burnside* at ¶ 8.

{¶ 42} The trial judge took no testimony and made no factual findings[2]: she watched the videos and concluded that the evidence obtained by the officers from Jackson should not be suppressed. Therefore, we should first determine whether the trial court's decision may be examined by an appellate court. Then, we must

---

2. Crim.R. 12(F) requires: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record." This did not occur here, but neither party made a timely request for findings of fact.

determine whether, in the absence of findings of fact, the video evidence is competent, credible evidence that supports the trial court's decision.

## A. Reviewing evidence before the trial court when no findings of fact were made

{¶ 43} In *State v. Pate*, 1st Dist. Hamilton Nos. C-130490 and C-130492, 2014-Ohio-2029, ¶ 11-12, the First District relied on our decision in *State v. Brown*, 64 Ohio St.3d 476, 481, 597 N.E.2d 97 (1992),[3] to apply a sufficient-evidence standard, *Pate* at ¶ 8, i.e., was there competent, credible evidence before the trial court, even though no findings of fact were made, and on *State v. Shields,* 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912. *Pate* at ¶ 10.

{¶ 44} In *Shields*, the defendant argued that because he had waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), only after he was threatened by a police officer, his statement should be suppressed. No findings of fact were made by the trial court. The First District determined that it could "directly examine the record to determine whether there [was] sufficient evidence to demonstrate that the trial court's decision was supported by the record and legally justified." *Id*. at ¶ 9; *see Pate* at ¶ 11.

{¶ 45} Thus, it is appropriate for this court to determine whether a trial court's decision on a motion to suppress was supported by competent, credible evidence even when the trial court failed to make findings of fact. I therefore agree with the majority that it is appropriate to review the denial of Jackson's motion to suppress. I note that in "[a]pplying *Brown*, we do not weigh the evidence; we simply determine if there is evidence in the record sufficient to support the trial

---

3. In *Brown*, the trial court did not make findings of fact when denying a motion to dismiss for lack of a speedy trial. The court of appeals held that because the trial court did not make findings of fact, nothing in the record verified that a parole holder had been placed on the defendant. On that basis, the court of appeals overturned the defendant's conviction. We reversed, holding that despite the trial court's failure to make findings of fact, there was "sufficient evidence demonstrating that the trial court's decision was legally justified and supported by the record." *Brown* at 482.

court's decision." *Pate* at ¶ 13. However, I dissent from the majority's judgment. Based on the videos, the only evidence in the record, I would find that Jackson's convictions were not based on competent, credible evidence. I would hold that the officers' search violated the Fourth Amendment, that the gun should be suppressed, and that Jackson's convictions must be vacated because they were based solely on his possession of the gun.

### B. De novo review of the law as applied to the evidence in the video

{¶ 46} In *Pate*, the First District cited *Burnside* for the proposition that an appellate court reviews "de novo the trial court's application of the law to * * * facts." *Pate* at ¶ 9, citing *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. This court must determine whether the trial court based its decision to deny Jackson's motion to suppress on competent, credible evidence, that is, "whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). Because the trial court did not make findings of fact, this court must review the videos to see whether competent, credible evidence supports the trial court's conclusion that suppression of the gun was not required.

### C. Opening the door was a search

{¶ 47} The videos show that the first officer who approached Jackson did not order him out of the car until after the officer had opened Jackson's car door. An officer may, without offending the Fourth Amendment, require the occupants of a lawfully stopped car to exit the vehicle. *Arizona v. Johnson*, 555 U.S. 323, 331, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009); *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). If an occupant does not comply with a lawful order to exit a vehicle, a police officer may be justified in removing the occupant from the car. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Our Fourth Amendment jurisprudence has long recognized

that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Here, the officer opened the driver's-side door, where Jackson was sitting, *before* he ordered Jackson out of the car. The time between asking for Jackson's driver's license and proof of insurance and opening the door was unduly brief.

### D. Plain-view analysis

{¶ 48} A law-enforcement officer is entitled under the plain-view exception to the warrant requirement of the Fourth Amendment to "seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Washington v. Chrisman*, 455 U.S. 1, 5-6, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). And an officer may observe and seize any evidence in plain view when ordering an occupant to step out of a stopped car. *Wilson* at 411 (seizing crack cocaine that had fallen to the ground was not unreasonable); *Mimms* at 107 (officers who frisked a defendant after seeing a large bulge in his jacket lawfully seized a revolver found in the defendant's waistband).

{¶ 49} Thus, *how* contraband came to be in plain view cannot be ignored. If Jackson had opened the door and left it open himself, thereby exposing the marijuana cigarette to the officers' view, the state's argument that discovery of the cigarette was legal would be stronger. Similarly, if Jackson had indicated that he would not comply with the officer's lawful order to exit the vehicle, the officer may have been justified in opening the door in order to remove him from the car and, if the cigarette was seen at that point, the discovery may have been legal. The majority appears to endorse this second scenario by asserting that Jackson was "uncooperative." Majority opinion at ¶ 1.

{¶ 50} But those scenarios are not supported by the videos. Jackson was not given the opportunity to open his own door. He was not explicitly ordered to

18

step out of the car before the officer opened the door. Instead, the officer stated that if Jackson did not present his ID, the officer would get Jackson out of the car. Within a second of making that observation, the officer opened the door and ordered Jackson out of the car. Then, some of the other officers on the scene moved Jackson from the vicinity of the door, which stopped him from closing the door to protect his privacy. Though the open door jutted into the road, no officer closed the door. Another officer then took advantage of the open interior of the car to observe what, with the door closed, could not have been seen.

{¶ 51} The officer who opened Jackson's door was not legally justified to do so. Nor was there legal justification for leaving the car door open. The action of the officer in opening the door before ordering Jackson from the car was a physical trespass into Jackson's private property. Some may argue that the act was de minimis, but even a seemingly de minimis trespass can constitute an illegal search. *See United States v. Jones*, 565 U.S. 400, 404-411, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (officers violated the Fourth Amendment when they trespassed by planting a magnetic Global-Positioning-System device on a car); *Arizona v. Hicks*, 480 U.S. 321, 324-325, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (moving stereo equipment suspected to be stolen so that the officer could read the serial numbers constituted an unlawful search without a warrant); *New York v. Class*, 475 U.S. 106, 114-115, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (opening a car door and moving papers obscuring a vehicle-identification number ("VIN"), which allowed an officer to see the handle of a gun, was a lawful search when federal regulations required that the VIN be visible).

### E. Subjective intent of the officer who opened the car door

{¶ 52} The majority states, "The lead officer's opening of the door was not a search because he did not act with the purpose of finding out what was inside the car." Majority opinion at ¶ 16. The majority argues that the lead officer was "focused on securing Jackson, who was being uncooperative," *id*. at ¶ 16, and that

the intrusion and trespass into Jackson's private space therefore did not constitute a search. Under what lens was Jackson uncooperative? And how does the video demonstrate the officer's subjective intent?

{¶ 53} The United States Supreme Court has consistently rejected consideration of subjective intent as a measurement of constitutionality. *Michigan v. Bryant*, 562 U.S. 344, 360, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011) (the primary purpose of police questioning of a victim is to be assessed by objective facts, not subjective motivations of the participants); *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (refusing to evaluate Fourth Amendment reasonableness in light of the law-enforcement officers' actual subjective motivations); *New York v. Quarles*, 467 U.S. 649, 655-656, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), fn. 6 (a law-enforcement officer's subjective motivation is irrelevant to determining the applicability of the public-safety exception to *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694); *Rhode Island v. Innis*, 446 U.S. 291, 301-302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (a police officer's subjective intent to obtain incriminatory statements is not relevant to determining whether an interrogation has occurred). And with a record that is devoid of testimony as well as of findings of fact, the subjective motivations of the police officer who stopped Jackson are simply not in the record.

{¶ 54} The majority apparently concedes that an officer's subjective intent is not a relevant consideration; it instead claims to determine intent through an objective inquiry. Yet, it ascribes a subjective intent when describing why the officer opened the door; based on this intent, the majority holds that a search did not occur. In *Class*, 475 U.S. at 114-115, 106 S.Ct. 960, 89 L.Ed.2d 81, however, the Supreme Court held that a search did occur when an officer opened a door and leaned in to move papers obscuring the VIN, although it held that the search was reasonable because a federal regulation required that a VIN be visible from outside the car.

**{¶ 55}** Consider the hypothetical of an officer kicking in a door, perhaps frustrated at having been denied a warrant to search the house. Would we say that his action was not a search because he acted in frustration and not out of a desire to find anything? Would we thereafter conclude that his fellow officers, standing behind him as he kicked in the door, were entitled to confiscate what now was in plain view once the open door revealed the interior of the home? The answer is clearly no. The unlawfulness of kicking in the door prevents the later discovery of contraband from being a legitimate discovery of evidence in plain view, notwithstanding whatever subjective intentions the officers may have had.

**{¶ 56}** The majority admits the illegality of the plain-view discovery of evidence that is presented in the above hypothetical but distinguishes it from Jackson's circumstances, stating, "but in our case the officer did not illegally open the car door." Majority opinion at ¶ 22. This is the point of plain disagreement between the majority and this dissent.

**{¶ 57}** As the majority states, *Mimms* and *Evans* "make clear that police may order a driver out of a car without violating the Fourth Amendment's proscription against unreasonable searches and seizures so long as the initial stop is lawful." Majority opinion at ¶ 20. The majority then asserts, "The door had to be opened for Jackson to get out of the car." *Id.* at ¶ 20. Making this illogical jump—claiming that it consequently does not matter who opened the door—takes us down a path toward the erosion of privacy rights due all persons, even those who neither have contraband nor carry it in their car.

**{¶ 58}** The Fourth Amendment protects privacy interests within the reasonable expectation of privacy. That is, "[w]hen an individual 'seeks to preserve [something] as private,' " *Carpenter v. United States*, ___ U.S. ___, ___, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018), quoting *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and "his expectation of privacy is 'one that society is prepared to recognize as reasonable,' " *id.*, quoting *Katz* at 361

(Harlan, J. concurring), "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Id*. Although the mobility of a car justifies an exception to the warrant requirement, a car is expected to be a relatively private space, and an intrusion into one is a search. *Carroll v. United States*, 267 U.S. 132, 153-154, 45 S.Ct. 280, 69 L.Ed.543 (1925); *Class*, 475 U.S. at 114-115, 106 S.Ct. 960, 89 L.Ed.2d 81.

{¶ 59} When an officer opens the car door and leaves it open, exposing the interior for all the world to see, the officer has breached the occupant's expectation of privacy. When a person opens his own door and leaves it open, exposing the interior of the car for all the world to see, he surrenders a reasonable expectation of privacy, having voluntarily exposed his own private affairs. But here, a police officer opened the door—even *before* ordering the person out of his car. The difference between the two is highly relevant. Had Jackson been "uncooperative" (as the majority asserts without pointing to any evidentiary support) in the face of a valid order to get out of the car, an officer could have been justified in opening the door to enforce that order. *See Johnson*, 555 U.S. at 331, 129 S.Ct. 781, 172 L.Ed.2d 694; *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443. But here, the video—the *only* evidence before the trial court—demonstrates without question that Jackson was not uncooperative, even if he was inquisitive, and that he was *not* ordered to get out of the car before the officer opened the door. The majority's assertion that it is "irrelevant" who breached Jackson's privacy flies in the face of the Fourth Amendment. The majority's essential trashing of the right of privacy here is misplaced; it is based on cases involving armed suspects, in which officers opened a car door because they were unable to see in the windows or unable to tell what was happening in the car and thus reasonably feared for their safety. *See State v. Mai*, 202 N.J. 12, 14-15, 23-24, 993 A.2d 1216 (2010) (officer was justified in opening the side door of a van when an armed suspect was believed to be inside and the officer feared he was preparing to open fire); *State v. Ferrise*, 269 N.W.2d

888, 889-890 (Minn. 1978) (after learning of an armed robbery, stopping car being driven on the wrong side of the road, and finding driver had no identification on him, officer was justified in opening the passenger-side door of a snow-covered car; officer could not tell if there was a passenger in the car); *United States v. Stanfield*, 109 F.3d 976, 981-988 (4th Cir.1997) (opening the door of a tinted-window sports-utility vehicle was reasonable in a stop of suspected drug traffickers when heavy window tint made it impossible to determine if there were back-seat passengers or other armed persons in the vehicle). But Jackson rolled down his windows and the video clearly shows that officers could see in his car. Jackson's case is thus devoid of exigencies or circumstances that justified breaching his reasonable expectation of privacy. The law does not support the majority's statement that it is "irrelevant" who opened the door. That critical distinction is at the very heart of what is the difference between a voluntary exposure and a government intrusion. Today, the majority chips away at the Fourth Amendment and decides in favor of government intrusion.

### F. Totality of the circumstances

{¶ 60} Finally, the majority opinion does not address the principle that "[t]he reasonableness of a search depends on the totality of the circumstances." *Grady v. North Carolina*, 575 U.S. 306, 310, 135 S.Ct. 1368, 191 L.Ed.2d 459 (2015). The officer who opened the door did not open it and leave it open in a one-on-one stop with Jackson; he opened the car door *before* he ordered Jackson out of the car, while accompanied by seven other police officers, thus allowing one of those officers the opportunity to peer into a hard-to-view space. Under a totality-of-the-circumstances test, every officer's action must be examined. Eight officers—not one of whom had a tint meter—stopped Jackson for an alleged tint violation, opened his door, moved him to the rear of his car, patted him down, left the door open in moving traffic, and then invaded the otherwise private space of his car. By any objective standard, the videos do not provide competent, credible

evidence that these officers conducted a lawful search for evidence of a crime throughout their encounter with Jackson.

**{¶ 61}** To describe the marijuana cigarette as in plain view is a fiction, since, but for a search based on no suspicion, the marijuana would not have been in plain view of the officer who discovered it. Simply stated, it was *not* "discovered in a place where the officer ha[d] a right to be." *Chrisman*, 455 U.S. at 6, 102 S.Ct. 812, 70 L.Ed.2d 778. Because the cigarette was in plain view only by virtue of a violation of Jackson's Fourth Amendment rights, the gun later discovered in the car should have been excluded as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## IV. CONCLUSION

**{¶ 62}** I agree with the conclusion of the majority that an appellate court may review a trial court's decision on a motion to suppress in the absence of any factual findings by the trial court. But because the majority opinion tolerates an invasion of privacy that is tantamount to a fishing expedition and ascribes subjective intent to the actions of the police officer who stopped Jackson, I respectfully dissent.

STEWART, J., concurs in the foregoing opinion.

———————————

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr. and Philip R. Cummings, Assistant Prosecuting Attorneys, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Sarah E. Nelson, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and John L. Rockenbach, Deputy Solicitor General, in support of appellee, for amicus curiae Ohio Attorney General.

Timothy Young, Ohio Public Defender, and Craig M. Jaquith, Assistant Public Defender, in support of appellant, for amicus curiae Ohio Public Defender.

————————————