[Cite as *State v. Zaller*, 2024-Ohio-2323.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-T-0031** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| MATTHEW ZALLER, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00183 |

**O P I N I O N**

Decided: June 17, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}  Defendant-appellant, Matthew Zaller, appeals the denial of his Motion to Suppress in the Trumbull County Court of Common Pleas.  For the following reasons, we affirm the decision of the lower court.

{¶2}  On March 30, 2022, the Trumbull County Grand Jury returned a five-count Indictment against Zaller, charging him with three counts of Carrying Concealed Weapons, felonies of the fourth degree in violation of R.C. 2923.12(A)(2) and (F)(1), and two counts of Improperly Handling Firearms in a Motor Vehicle, felonies of the fourth degree in violation of R.C. 2923.16(B) and (I).

{¶3}   On November 14, 2022, the trial court denied Zaller's Motion to Suppress.

{¶4}   On January 23, 2023, Zaller entered a plea of "no contest" to three counts of Attempted Carrying Concealed Weapons, felonies of the fifth degree in violation of R.C. 2923.02 and R.C. 2923.12(A)(2) and (F)(1).

{¶5}   On April 12, 2023, the trial court sentenced Zaller to five years of community control for each count to be served concurrently and to be subject to the general supervision of the Adult Probation Department under any terms and conditions they deem appropriate.

{¶6}   On April 24, 2023, Zaller filed a Notice of Appeal.  On appeal, he raises the following assignment of error: "The trial court erred and violated appellant's constitutional rights by denying appellant's motion to suppress evidence."

{¶7}   "Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but, "must then independently [i.e., de novo] determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶8}   In the present case, the trial court made the following factual findings:

> Factually, on or about February 18, 2022, Officer Fowler of the Warren City Police Department observed a yellow [C]obalt traveling eastbound on Porter Street onto Elm Road.  The yellow [C]obalt, driven by the Defendant, made an improper turn by bypassing the curb lane and turning directly into the center lane in violation of the Warren City ordinances.  Officer Fowler initiated a traffic stop of Defendant's vehicle.  * * *
>
> Officer Fowler approached the vehicle and advised the driver and sole occupant, later identified as the Defendant, of the reason

2

for the stop. Officer Fowler also requested Defendant's driver's license. During this initial exchange, Officer Fowler observed a metallic object with a black bottom on the passenger side floorboard, which Fowler believed to be a magazine for a firearm.

Due to this observation, Officer Fowler requested another police unit to respond to the stop. Officer Fowler also ran the Defendant's personal information through dispatch. Dispatch advised Office[r] Fowler that Defendant had a valid license and did not have any active warrants for his arrest. Dispatch also did not advise Officer Fowler that Defendant had an active license to carry a concealed firearm. Officer Fowler testified that [d]ispatch typically provides this information to officers during a traffic stop.

Officer Fowler then re-approached the Defendant and requested his proof of insurance. Officer Fowler testified that the Defendant started to get agitated and began requesting to leave.

Approximately two minutes into the stop, Officer Wilson arrived on scene to assist. Officer Fowler signaled to Officer Wilson over the top of the vehicle to indicate he believed there was a firearm in the vehicle.

Officer Fowler then instructed the Defendant to step out of the vehicle. The Defendant became increasingly more agitated and he refused Officer Fowler's request to exit the vehicle. Officer Fowler testified that based upon his training and experience, the Defendant's refusal to comply with his orders and agitated state, indicated to him that there was something inside the vehicle. Defendant's actions caused Officer Fowler to be concerned with officer safety.

As Officer Wilson started to explain that the Defendant's failure to cooperate could result in his arrest, Officer Fowler realized that the item he believed to be a firearm magazine was a lighter. However, based upon the Defendant's behavior, Officer Fowler continued to request that the Defendant step out of the vehicle for officer safety.

When the Defendant exited the vehicle, the Defendant started toward the front of his vehicle and away from officers. Alarmed by this sudden movement, Officer Fowler asked Defendant to walk toward the officers. Officer Fowler testified that the Defendant's conduct of walking away towards the front of the vehicle was not normal behavior for a typical traffic stop. Based on the behavior of the Defendant and concerns for officer safety, officers detained the

3

Defendant. Officer Fowler informed the Defendant that he would be conducting a pat down. However, prior to Officer Fowler beginning the pat down, the Defendant voluntarily stated that he had a firearm in his pocket.

{¶9} On appeal, Zaller argues the police officers lacked constitutional authority to order him to exit his vehicle and to conduct a pat-down search: "In the case at bar, any reasonably articula[ble] suspicion of criminal activity on the part of Appellant 'evaporated' when the arresting officers discovered that the item [thought to be a magazine] was not a weapon or related to a weapon but was rather a lighter. At that point in time, the officers had no justification to further detain Appellant and he should have been permitted to leave." Assignment of Error and Brief of Appellant at 4. We disagree.

{¶10} The United States Supreme Court has summarized the constitutional implications of the Fourth Amendment on traffic stops as follows:

> A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called 'Terry stop' . . . than to a formal arrest." *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), in turn citing *Terry v. Ohio*, 392 U.S. 1 (1968)). See also *Arizona v. Johnson*, 555 U.S. 323, 330 (2009). Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, [*Illinois v.*] *Caballes*, 543 U.S. [405], at 407, and attend to related safety concerns, *infra*, at 1619-1620. See also *United States v. Sharpe*, 470 U.S. 675, 685 (1985); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." *Ibid.* See also *Caballes*, 543 U.S., at 407. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. See *Sharpe*, 470 U.S., at 686 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").

*Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).

4

Case No. 2023-T-0031

{¶11} In the present case, Zaller was stopped for a traffic violation. In the course of advising Zaller of the reason for the stop and obtaining his license, Officer Fowler observed what he thought was "a magazine for a pistol" on the passenger side floorboard. Believing there was "possibly a firearm in the vehicle," Officer Fowler requested another unit and then proceeded to run Zaller's driver's license number. Officer Fowler testified that dispatch "didn't advise me that [Zaller] had a CCW permit or anything like that, which typically if somebody does they would tell us right away." Officer Fowler returned to the vehicle, asked for Zaller's insurance, and advised him that he was waiting for dispatch. Zaller began to question why he would have to wait and asserted that he had a right to leave. Officer Fowler advised that he was not finished with his business and Zaller asked for his ticket so he could leave. As Officer Wilson approached the vehicle, Officer Fowler asked Zaller to step out. This was approximately three minutes after Officer Fowler's initial approach. Officer Fowler's reasonable belief that there was a firearm in the vehicle justified the minimal extension of the stop to await Officer Wilson's arrival before ordering Zaller out of the vehicle. "Police officers may take steps that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a] stop.'" *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 21, quoting *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Moreover, where "the officer [has] ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997). Any delay in completing the stop after the arrival of Officer Wilson was the result of Zaller's own conduct.

5

Case No. 2023-T-0031

{¶12} We further note that nothing more was needed for Officer Fowler to order Zaller to exit the vehicle. There is no question about Officer Fowler's authority to do so. "Under *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 6, 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'" *State v. Jackson*, 171 Ohio St.3d 412, 2022-Ohio-4365, 218 N.E.3d 790, ¶ 13. "An officer needs no justification beyond that necessary for the initial stop to order a driver from the car." *Id.*; *Robinette* at 239 ("the officers' subjective motivation for continuing the detention is irrelevant").

{¶13} When asked to step out of the vehicle, Zaller refused. The officers opened both doors of the vehicle and Officer Fowler placed a hand on Zaller's forearm. Zaller raised his hands (so that Officer Fowler released his forearm) but did not exit the vehicle. At this point, Officer Fowler realized that what he thought was a gun magazine was in fact a lighter for propane torches. Officer Fowler explained to Zaller that this was why he ordered him to step out. Zaller continued to argue. Officer Wilson explained to Zaller that Officer Fowler had the right to order him out of the vehicle and, if he continued to refuse, he could be arrested for failing to comply. Zaller then exited the vehicle. Officer Fowler asked if he had any knives on him or anything like that. Zaller replied, "no," and asserted that he was not going to be searched. As he said this, he took a couple of steps toward the front of his vehicle and turned around. He then walked toward the back of his vehicle. Officer Wilson took his arm, told him to calm down, and advised him that Officer Fowler

6

could pat him down for weapons "[be]cause the way you're acting right now." Zaller became compliant and advised the officers that there was a gun in his jacket pocket.

{¶14} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search [a pat-down or frisk] for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus; *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 9. "Typically, to conduct a pat-down search for weapons, an officer must have a 'specific and articulable' belief based on the 'reasonably prudent man' standard that an individual is armed and dangerous." *State v. Lozada*, 92 Ohio St.3d 74, 75, 748 N.E.2d 520 (2001). "The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶15} We find that the officers were justified in subjecting Zaller to a protective search for weapons based on his agitated and erratic behavior. Zaller repeatedly refused to comply with the officers' demands, was argumentative, and was evasive in his conduct. Circumstances such as these have been found sufficient to justify a protective search. *See State v. Core*, 2d Dist. Montgomery No. 29776, 2023-Ohio-4061, ¶ 27 (furtive movements and failure to respond to the officer's questions); *State v. Luther*, 2018-Ohio-4568, 123 N.E.3d 296, ¶ 21 (11th Dist.) (nervousness and agitation); *State v. Alexander-Lindsey*, 2016-Ohio-3033, 65 N.E.3d 129, ¶ 23-26 (4th Dist.) (excessive nervousness and furtive behavior); *United States v. Patton*, 705 F.3d 734, 739 (7th Cir.2013) (recognizing that evasive behavior as well as the failure or refusal to comply with a police officer's order

7

are factors that contribute to a reasonable suspicion that he may be dangerous) (cases cited).

{¶16} The sole assignment of error is without merit.

{¶17} For the foregoing reasons, the denial of Zaller's Motion to Suppress is affirmed. Costs to be taxed against the appellant.


EUGENE A. LUCCI, P.J.,

ROBERT J. PATTON, J.,

concur.

8

Case No. 2023-T-0031